## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DARIUS HARRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-CV-252-NJR-DGW** |
| | ) | |
| **DENNIS LARSON,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Currently before the Court is a motion to dismiss filed by Defendants Vipin Shah and Lynn Bradbury on January 11, 2016 (Doc. 79). For the reasons set forth below, the motion is denied.

### BACKGROUND

Plaintiff Darius Harris filed his original complaint pursuant to 28 U.S.C. § 1983 on March 6, 2015, alleging that he received inadequate medical care while he was incarcerated at the Western Illinois Correctional Center and Big Muddy River Correctional Center (Doc. 1). The operative complaint in this matter is Plaintiff's Fourth Amended Complaint (Doc. 65).

Plaintiff alleges that on August 2, 2010, while housed at Western Illinois, he injured his knee and finger while playing basketball. At the time, Plaintiff believed that he had a torn ACL in his knee and a broken finger that required medical treatment. Nurse Bradbury only gave Plaintiff an icepack and Tylenol for his knee, however, and she told Plaintiff to fill out a medical request for nurse sick call, which he did. After nine

days of not being seen by medical staff, Plaintiff filed an emergency grievance around August 11, 2010.

Despite the emergency grievance, Plaintiff still did not see the doctor, Vipin Shah, until August 30, 2010. Dr. Shah told him that because he was being transferred the next day to Stateville Correctional Center, he should seek medical care there. Dr. Shah also refused to provide medication because of the transfer; he told Plaintiff that there would be no point in prescribing medication because Plaintiff would not be able to take it on the transfer bus.

When Plaintiff returned to Western Illinois twenty days later, he again sought medical care. He was seen on September 20, 2010, and his finger was placed in a splint, but no pain medication was ordered. On September 22, 2010, Dr. Shah ordered an x-ray of his finger; it revealed a small fracture in his finger. Dr. Shah discounted the severity of the injury and Plaintiff's complaint that his finger was now crooked and difficult to straighten. Plaintiff's knee was x-rayed on October 14, 2010; however, the x-ray would not have revealed damage to the ACL, and Plaintiff's request for an MRI was refused by Dr. Shah. Plaintiff received no other care regarding his finger and knee until his transfer to Big Muddy River on March 30, 2011. Plaintiff finally received an MRI of his knee in June 2015, which revealed that Plaintiff had a torn ACL and a torn meniscus (*see* Doc. 65, p. 37).

Plaintiff is currently proceeding on the following two counts:[1]

**Count 1**:    Eighth Amendment claim for deliberate indifference to his serious medical needs related to his knee and finger injury

---

[1] Plaintiff had a third claim for deliberate indifference as to Dr. Stephen Ritz for failing to approve an MRI prior to June 5, 2015. On August 29, 2016, the Court granted summary judgment to Dr. Ritz (Doc. 121).

against Defendants Dennis Larson and Vipin Shah beginning in August 2010;

**Count 2**:    Eighth Amendment claim for deliberate indifference to his serious medical needs related to his knee and finger injury in August 2010 against Defendant Nurse L. Bradbury.

(Docs. 64, 87, 121).

Defendants seek dismissal of Count 1 against Dr. Shah and Count 2 against Nurse Bradbury arguing that Plaintiff's complaint was filed after the statute of limitations on the claims expired (Doc. 79).

## DISCUSSION

On a defendant's motion to dismiss, all facts in the complaint are accepted as true. *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To state a cognizable claim, the complaint must provide enough detail to give defendants fair notice of the nature of the claim and the grounds upon which it rests and to show that relief is plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007). A statute of limitations defense is an affirmative defense that generally would not be brought pursuant to a motion to dismiss. FED. R. CIV. P. 8(c). However, "the statute of limitations may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).

As Defendants note, there is a two-year statute of limitations that applies to Section 1983 suits in Illinois, which is tolled while the prisoner exhausts the

administrative grievance process. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013) (citing *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001)). For a Section 1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs, "[t]he statute of limitations starts to run when the plaintiff discovers his injury and its cause even if the full extent or severity of the injury is not yet known." *Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013). When the violation of the plaintiff's constitutional rights is a continuing one, however, the statute of limitations does not start to run until later than the date of discovery. *Id.* at 770. Specifically, for continuing violations, the statute of limitations does not start to run *any earlier* than the last day of the ongoing injury." *Id.* (emphasis in original) (citing *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001) ("'[T]he cause of action accrues at . . . the date of the last *injury*.'")).

Here, Plaintiff's Fourth Amended Complaint alleges a continuing violation. He claims that he injured himself on August 2, 2010, and that Dr. Shah and Nurse Bradbury refused to provide proper medical treatment for his injuries. This refusal continued until Plaintiff was transferred from Western Illinois to Big Muddy on March 30, 2011. "Every day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew." *Heard*, 253 F.3d at 318. Thus, the statute of limitations period did not begin to run until March 30, 2011, the last possible day that Plaintiff could have been treated by Defendants at Western Illinois.[2] *See id.* Plaintiff thus had until March 30, 2013, to file his

---

[2] Defendants are mistaken as to the importance of the continuing violation allegation and its relationship to the statute of limitations. Plaintiff's claim did not accrue on the last date that Defendants treated Plaintiff, which was August 2, 2010, for Nurse Bradbury, and November 11, 2010, for Dr. Shah. Rather, the limitations period accrued on the last possible date that these Defendants *could have* rendered allegedly

complaint against Dr. Shah and Nurse Bradbury, unless tolling applies.

As previously mentioned, the statute of limitations is tolled while a prisoner exhausts the administrative grievance process. It is undisputed that Plaintiff engaged the grievance process, thereby tolling limitations clock for at least some period of time. The question for the Court is how long that period lasted and when the clock began to run again.

In the complaint, Plaintiff states that he grieved the lack of medical care provided at Western Illinois "several times" (Doc. 65, p. 5). Grievances attached to the original complaint show that Plaintiff filed a grievance on August 11, 2010, which the warden deemed was an emergency grievance and should be expedited (Doc. 1, p. 9). Despite the warden's command, Plaintiff still had not seen a doctor for his knee injury by September 19, 2010, so he filed another grievance (Doc. 1, p. 11). The warden deemed this one was not an emergency (Doc. 1, p. 11). Plaintiff then filed another grievance on September 22, 2010, but the grievance does not indicate whether the warden responded (*see* Doc. 1, p. 13). Plaintiff alleges that he did not receive a response (Doc. 65, p. 5). Plaintiff further alleges that he attempted to exhaust those three grievances by appealing them to the ARB on October 6, 2010 (Doc. 65, p. 5; *see* Doc. 1, p. 8). The ARB received Plaintiff's appeal on October 12, 2010 (*see* Doc. 1, pp. 8–14). Plaintiff alleges that he never received a response from the ARB (Doc. 65, p. 5).

Defendants do not discuss whether, and at what point, the ARB's failure to respond rendered the grievance process unavailable to Plaintiff. It is clear that there is a

---

adequate medical care. This date must be March 30, 2011, which is the date of Plaintiff's transfer to Big Muddy, because there is no allegation that either Defendant stopped providing, or was not able to continue providing, medical care to Plaintiff at Western Illinois prior to that date. *See id.*, 253 F.3d at 317-19.

point where a tardy response from the ARB becomes an unavailable grievance process to the inmate, but it is unclear where that point is. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (holding the PLRA does not allow prison officials to "exploit the exhaustion requirement through indefinite delay in responding to grievances"); *Jamison v. Franko*, No. 12 C 0242, 2013 WL 5166626, at *3 n.3 (N.D. Ill. Sept. 13, 2013) (Exactly where the line is between a late response and an unavailable process is unclear."). Even if that point were determinable, it is unclear what effect it would have on the limitations clock because Defendants do not attempt to explain the relationship between an unavailable grievance process and tolling the statute of limitations.

Instead, Defendants ignore the grievances attached to the original complaint and give Plaintiff the benefit of all reasonable inferences by assuming that the latest relevant grievance Plaintiff could have filed would have been on May 28, 2011, sixty days after Plaintiff was transferred from Western Illinois (Doc. 79). Defendants go on to extrapolate that if Plaintiff received timely responses and made timely appeals, the grievance process would have concluded on February 27, 2012, six months after the ARB would have received Plaintiff's appeal, thus rendering the complaint filed on March 6, 2015, untimely by over a year given the two-year statute of limitations in this case (Doc. 79).

Defendants present no authority indicating a statute of limitations analysis can be based on an assumption about Plaintiff's efforts to exhaust his administrative remedies, as opposed to the actual facts of the case. Even if such an assumption is acceptable, however, Defendants fail to cite any case law stating that the tolling period ends immediately at the conclusion of the six-month period allotted to the ARB to make its

decision after receiving an appealed grievance. The Administrative Code clearly indicates that the recommended six-month timeframe for the ARB to respond to an inmate's appeal shall be adhered to "where reasonably feasible under the circumstances." ILL. ADMIN. CODE, tit.20, § 504.850(f). As the Court noted in *Woods v. Forehand*, the six-month timeframe is not a strict deadline. *Woods v. Forehand*, No. 13-CV-1130-NJR-DGW, 2015 WL 1188326, at *3 (S.D. Ill. Mar. 12, 2015) (citing *Gregory v. Santos*, No. 07-CV-669-JPG-CJP, 2010 WL 750047, at *6 (S.D. Ill. Jan. 19, 2010), *report and recommendation adopted as modified*, 2010 WL 750040 (S.D. Ill. Mar. 3, 2010) ("Section 504.850(f) does not strictly require the Director to respond to an appeal within six months.")); *Beahringer v. Page*, 789 N.E.2d 1216, 1226 (Ill. 2003) ("The time frames for the consideration of grievances were directory and not mandatory."). *Cf. Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004) (rejecting inmate's argument that the administrative process is no longer available once the recommended deadline has passed). Therefore, the Court cannot agree with Defendants' assumption that the tolling period ended at the conclusion of the ARB's six-month deadline to respond.

Defendants have failed to provide a properly supported explanation as to when the tolling period ended. Therefore, the motion to dismiss must be denied. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012) (date tolling period ended was an issue of fact precluding dismissal of case when the record contained no final decision from the ARB). The Court acknowledges that Defendants' statute of limitations defense has potential merit. But, at this point, the Court is unable to fully evaluate the defense because Defendants' argument is based entirely on speculation and insufficient legal authority. It

seems to the Court that the appropriate time to raise the argument regarding the statute

of limitations is after discovery and in conjunction with a motion for summary judgment

on the merits of the case.

<u>CONCLUSION</u>

For the reasons set forth above, the motion to dismiss filed by Defendants Vipin

Shah and Lynn Bradbury (Doc. 79) is **DENIED.**

**IT IS SO ORDERED.**

**DATED:   September 21, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**