IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARIUS HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:15-cv-252-NJR-DGW |
| ) | |
| DENNIS LARSON, VIPIN SHAH, and ) | |
| ZACHARY ROECKEMAN, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the Motion for Preliminary Injunction filed by Plaintiff on June 21, 2016 (Doc. 103). For the reasons set forth below, it is **RECOMMENDED** that the Motion be **DENIED** and that the Court adopt the following findings of fact and conclusions of law.

### INTRODUCTION

Plaintiff is proceeding on the Fourth Amended Complaint, filed on December 8, 2015 (Doc. 65), alleging that he was denied adequate medical care related to a knee and finger injury beginning in August 2010 while he was incarcerated at the Western Illinois Correctional Center and the Big Muddy River Correctional Center. Due to various Orders, Plaintiff is proceeding on the following claims:

> **Count 1**: Eighth Amendment claim for deliberate indifference to his serious medical needs related to his knee and finger injury against Defendants Dennis Larson and Vipin Shah beginning in August, 2010

>**Count 2**: Eighth Amendment claim for deliberate indifference to his serious medical needs related to his knee and finger injury in August 2010 against Defendant Nurse L. Bradbury.

(Docs. 64, 87, and 121).

Zachary Roeckeman (the Warden at Big Muddy River CC) also remains in this suit solely for the purpose of perfecting injunctive relief. In his request for preliminary injunctive relief, Plaintiff seeks an MRI of his right knee, to be sent for a follow-up appointment to Dr. Jeffrey McIntosh, who performed an ACL replacement and partial meniscectomy surgery, and appropriate medical care. A hearing on this motion was held on July 14, 2016 in conjunction with a *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), hearing on a motion for summary on the exhaustion of administrative remedies (Doc. 88). At the hearing, Plaintiff testified along with Dr. Roderick Matticks, a board certified physician who has worked in correctional medicine since 2000 and who reviewed the medical records in this matter. Since the filing of the motion and the hearing, Plaintiff has been appointed counsel.

### FINDINGS OF FACT

Plaintiff had an MRI of his right knee on June 30, 2015 (after he filed this lawsuit but before he filed his Fourth Amended Complaint). It revealed that the "Anterior Cruciate Ligament" (ACL) in his right knee was "totally disrupted" (Doc. 103, p. 7). Plaintiff was referred to an outside surgeon, and after some confusion about what surgery he needed, he was operated on by Dr. Jeffrey McIntosh who performed a total ACL reconstruction and a partial meniscectomy on September 14, 2015. Plaintiff underwent physical therapy for the following 6 weeks.

On April 16, 2016, after Plaintiff was transferred to Graham CC (where he is currently housed), he began to have pain and inflammation in the knee. He was seen by Dr. Francis Kayira (who is not a Defendant herein) on June 3, 2016 who ordered an x-ray and Meloxicam for

inflammation. Dr. Kayira also performed a physical examination, finding "no swelling, well healed scars, and that Plaintiff was able to ambulate well" (Doc. 109-1, p. 2). The x-ray revealed a "small effusion" which could indicate an injury because of excess fluid (*Id.*). On June 17, 2016, Meloxicam was replaced with Ibuprofen at Plaintiff's request. As a follow up to the effusion, on June 28, 2016, another x-ray was ordered that was "completely normal" with no effusion. As indicated at the hearing, the report notes no acute findings with respect to Plaintiff's surgery site. Dr. Kayira states that there is no basis for another MRI or any surgical evaluation at the time of his affidavit.

At the hearing, Plaintiff indicated that the Ibuprofen helped with the pain and inflammation; however, he nonetheless wants an MRI and a follow-up appointment with the surgeon because he is concerned about the underlying causes of the pain almost a year post-op. He also testified that Dr. Kayira did not perform any physical tests.

Dr. Matticks testified that there was nothing in Plaintiff's medical record that would necessitate another MRI or a follow-up appointment with Plaintiff's surgeon. In describing the steps that would be taken in Plaintiff's situation (pain post-ACL repair), Dr. Matticks testified that an x-ray would be the first step. The next step would be to perform various physical examinations, Lachman, Anterior Drawer Test, Pivot Shift, and Lag. Dr. Matticks noted that the records indicate that a physical examination of Plaintiff's knee was performed (although it is not clear which one of these tests, or all, were performed by Dr. Kayira). Dr. Matticks further testified that pain or discomfort after ACL surgery is not unheard of and could be caused by overuse and scarring and that recovery from the type of surgery that Plaintiff had would take time.

Dr. Matticks admitted that an x-ray would not detect issues with the ACL or muscles but a physical exam would. Thus, injury to the ACL is detected first through a physical examination

and taking a history.

## CONCLUSIONS OF LAW

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that Plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). Plaintiff has the burden of demonstrating:

1. a reasonable likelihood of success on the merits;
2. no adequate remedy at law; and
3. irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012). As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success – in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once Plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

The main purpose of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Accordingly, the preliminary injunctive relief sought must relate to the claims pending in the underlying lawsuit. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (holding that "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint"). A motion for preliminary injunction is not a proper avenue to pursue additional claims or name additional defendants. The Court notes the Plaintiff is seeking preliminary injunctive relief from Dr. Kayira and his current custodian, neither of whom are named in the complaint (although the Warden of Big Muddy CC, where Plaintiff was previously housed, is a Defendant). None of the named Defendants are in a position to give Plaintiff the relief he is requesting, namely additional diagnostic tests for his knee pain. And, even if Plaintiff's current custodian were substituted for Warden Roeckman, it is unlikely that Plaintiff would receive any injunctive relief in light of his transfer from Big Muddy CC and subsequent medical treatment. *See Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015) ("A preliminary injunction is appropriate when it grants relief of the same nature as that to be finally granted.")

Plaintiff complains of conduct that occurred after the events underlying this lawsuit and involves persons who are not named in the operative Complaint. Plaintiff's Fourth Amended Complaint claims that Dr. Shah and Dr. Larson delayed in their treatment of his knee injury which turned out to be a torn ACL requiring surgery. While this lawsuit was pending, Plaintiff had the surgery and now complains in the motion that post-operative care has been lacking. While the medical issues that Plaintiff complains about are the same, namely his knee problems, the issues that he raises in this motion for injunctive relief and that which underlies his lawsuit are distinct.

*See e.g. Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010) (finding that the plaintiff could not seek injunctive relief with respect to kosher meals at a facility and during a time period not listed in the complaint, even though the issue of kosher meals at a different facility served the basis of his complaint). If Plaintiff wishes to pursue these claims as to Dr. Kayira, he should file a new lawsuit, if appropriate, and seek injunctive relief therein.

### RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Preliminary Injunction filed by Plaintiff on June 21, 2016 (Doc. 103) be **DENIED** and that that Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: February 22, 2017**

                                              **DONALD G. WILKERSON**
                                              **United States Magistrate Judge**